CARLOS WESTERBAND, in his capacity as Chairman of the PUERTO RICAN UNITED FRONT PARTY, and MODESTO RIVERA RAMOS, in his capacity as Chairman of the FEDERAL UNIONIST AGRARIAN PARTY, Interveners and Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, CIVIL SECTION, JORGE MELÉNDEZ VELA, SUPERIOR JUDGE, and EMILIO MATOS RÍOS AND/OR FEDERATE PROGRESSIVE PARTY, Respondents. THE COMMONWEALTH BOARD OF ELECTIONS and its Chairman ERNESTO MIERES CALIMANO and regular members BALDOMERO ROIG and SAMUEL R. QUIÑONES, Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, JORGE MELÉNDEZ VELA, JUDGE, Respondent; EMILIO MATOS RÍOS, Intervener.

Nos. O-68-120,      Decided June 28, 1968.
O-68-142.

362

*Ángel Roberto Díaz* for the Puerto Rican United Front Party and Federal Unionist Agrarian Party. *Rafael A. Rivera Cruz, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for the Commonwealth Board of Elections and its Chairman Ernesto Mieres Calimano. *Jorge Luis Córdova Díaz, Francisco Ponsa Feliú, Enrique Córdova Díaz, Carlos Romero Barceló,* and *Juan Antonio Palerm* for Emilio Matos Ríos and/or Federate Progressive Party.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

In petition O-68-120 we issued certiorari to decide a right of intervention. The facts to be considered are the following:

(1) On August 21, 1967, a letter sent by Magdalena López, Secretary of the Federate Progressive political group,

was received at the Commonwealth Board of Elections, requesting the General Supervisor of Elections:

(i) To change the name from Federate Progressive Party to United Progressive Party;

(ii) To eliminate the emblem of the royal palm tree and the crossed palms and to leave the coconut palm tree as emblem of the group;

(iii) To substitute the Board of Directors by other persons mentioned in said letter.

(2) The foregoing letter was considered by the Commonwealth Board of Elections the following day at its meeting of August 22, 1967. With respect to this petition the Board decided:

(i) That the name "United Progressive" contained part of names of groups which had sought from the Board, since November 21, 1966, the preliminary acknowledgment in the legal procedure for the registration of a political party and that they had entered in such registration procedure after having filed petitions which were under the consideration of the Board under the name "Puerto Rican United Front," of which the principal director was Carlos Westerband; and

(ii) "Because the United Progressive group had submitted an emblem for the consideration of the Commonwealth Board of Elections which violates the provisions of the Act."

The foregoing resolutions were adopted by unanimity of the members of the Commonwealth Board of Elections, as certified by its Secretary, Carmelo J. Gorritz.

(3) On August 24, 1967, the General Supervisor of Elections answered the letter of Magdalena López of August 21, and informed her that the Board had denied the petition.

(4) Feeling aggrieved by the decision of the Board, the next day, August 25, 1967, a petition for review, civil case

No. 67-4552, was filed in the San Juan Part of the Superior Court, by Luis A. Ferré, José Menéndez Monroig, Emilio Matos Ríos, and Magdalena López Otero, as petitioners, against the Commonwealth Board of Elections, its Chairman, Ernesto Mieres Calimano, and its regular members, Baldomero Roig and Samuel R. Quiñones. The action was to review the decision of August 22 of the Board, refusing to make the changes requested. On August 31, 1967, the San Juan Part of the Superior Court issued a writ requesting the Board to send to the court, within the term of ten days, the record in connection with the matter referred to in the petition for review. As a consequence of an incident of change of venue and elimination of parties, the petition was finally filed in the Bayamón Part of the Superior Court, under No. 67-3231, Emilio Matos Ríos being left as the only petitioner. The Board represented by the Secretary of Justice, answered the petition for review and argued in support of the resolution challenged.

### Jurisdiction

Petitioners herein make allegations in this petition in connection with the jurisdiction of the trial court on the matter. One of the arguments in support of their intervention in the suit is the right they allege to have to challenge the jurisdiction of the trial court.

In defense of our own jurisdiction to make pronouncements in this petition, since if the trial court has no jurisdiction in the matter, this Court would also lack jurisdiction on the matter on appeal, we shall turn to consider the same.

Section 37 of the Election Law, as amended by Act No. 3 of March 26, 1964—16 L.P.R.A. § 112—legislates on Nomination by Petition and provides that:

"No *political group* wishing to register a candidacy or to be constituted into a party by petition shall use or adopt in whole or in part a name or emblem previously used or adopted by any other *political party,* or any name or emblem in whole or in part similar to a name or emblem previously used or adopted by another *political party,* if such other *party* still claims or uses such name or emblem. *Neither shall there be used or adopted any name, emblem or insignia whose use for election purposes is prohibited by law."* (Italics ours.)

After providing in detail on the rules and requirements to be complied with in the petitions for the registration of candidates, the same § 37 establishes that said petitions nominating candidates shall be filed in the Office of the Commonwealth Board of Elections, not later than 12 noon of the first day of June of the election year to which they refer. The Commonwealth Board is not authorized nor shall have power to pass upon the eligibility of a candidate whose nomination is filed in its office, but the Board has express power, pursuant to said § 37, to determine the validity of all petitions, and to adopt the pertinent resolutions in conformity with the law.

It then provides that any decision of the Commonwealth Board of Elections may be reviewed, at the request of the petitioner or of the challenger, by the Superior Court of the territorial demarcation of the precinct where the petition was sworn; and any review sought under those provisions shall be filed within the term of 5 days from the date of the decision of the Board, and the same shall be heard and decided not later than within 20 days from the date it was filed.

The petition for review filed in this case in the Superior Court within the 5 days from the date of the decision of the Board, referring to nominations by petition regulated by § 37 of the Election Law, was the correct proceeding

which gave the trial court jurisdiction on the matter.[1] In view of the facts indicated, the proceeding described in § 12 of the Election Law, as amended by Act No. 3 of October 5, 1965, providing that all resolutions of the Commonwealth Board of Elections shall, to be effective and valid, be adopted by the unanimous vote of the members of said Board representing the political parties, and any matter on which the vote is not unanimous shall be decided by the General Supervisor of Elections, whose decision shall be deemed as the decision of the Board, was inapplicable as insinuated by petitioners herein. In such case, an appeal may be taken from the decision *by any member of said Commonwealth Board* representing a political party, in the manner prescribed in § 13(d) of the Election Law, that is, before the Chief Justice of the Supreme Court.

Our jurisdiction having been decided, we shall continue with the statement of facts.

(5) The decision of August 22, 1967 of the Board having been reviewed at administrative level, on February 13, 1968 the Superior Court rendered judgment with the following two basic pronouncements:

(i) That the group Federate Progressive Party was entitled to change its name to that of United Progressive Party and to use the word "United" in its name.

(ii) That said group, Federate Progressive Party, was entitled to use the coconut palm tree as emblem, since this is not a symbol prohibited by law in accordance with the

---

[1] This proceeding being an appeal from an administrative organization to the Superior Court, the decision of the latter on the merits may be reviewed by this Court by way of certiorari, pursuant to the provisions of § 14(d) of the Judiciary Act, No. 11 of July 24, 1952, as amended by Act No. 115 of June 26, 1958. This petition for certiorari is governed by Rule 15.1(a) of the Rules of this Supreme Court, and does not have an express term to be filed. The petition we are considering, however, is a classic certiorari inasmuch as we are reviewing an order of the Superior Court, denying an intervention, entered *subsequent to the judgment.* Section 14(e).

prohibition contained in § 37 of the Election Law. In the dispositive part of its judgment, the court ordered the Board to proceed with the registration of said group with the name of United Progressive Party and with the emblem of the coconut palm tree after the filing in said Board of the sworn statements of the members of the new Board of Directors nominated accepting such designation and stating that they are willing to fulfill the mission entrusted to them by the petitioners; and after the filing under oath by the original members of the Central Body of a certificate of the resolutions made by them and which were notified to the Board by Mrs. López in her letter of August 21, 1967. The judgment on the merits was notified to the parties on February 13, 1968.

(6) On February 19, 1968 a motion for intervention and for setting aside the judgment rendered was filed before the trial court by petitioners herein, Carlos Westerband, as Chairman of the Puerto Rican United Front Party, and Modesto Rivera Ramos, as Chairman of the Federal Unionist Agrarian Party.

(7) In synthesis, one of the interveners alleged that he had prior claim to the use of the name "United," and the other, to the emblem of the coconut palm tree, for which reason according to them, the judgment rendered affected their prior claims. As to the emblem of the coconut palm tree, intervener Modesto Rivera Ramos alleged that the judgment dispossessed his group of said emblem . . . "if the electoral use of the coconut palm tree as emblem is permitted . . . ." "If the coconut palm tree is permitted as an emblem despite the fact that it was actually used together with the royal palm tree in the plebiscitary campaign." In their petition for certiorari before this Court there is a similar expression on the part of the interveners, petitioners herein.

(8) Subsequently the interveners therein also denied jurisdiction on the matter to the trial court, question which has previously been decided.

(9) The court set the session of March 14, 1968 to hear the interveners and evidence was submitted. The same day, March 14, the Board appeared separately requesting the court to set aside the judgment of February 13, on the ground that up to that date the Board had not received any petition in compliance with the orders in the dispositive part of the same. It was alleged in said motion, that on the contrary, the Board had information in the sense that petitioner Matos Ríos and his group United Progressive Party had held a convention and had agreed to dissolve as a political group, in order to join the party by petition called New Progressive Party. This contention of the Board was not argued at the hearing of March 14 to hear the interveners. It was argued at a subsequent hearing held on April 25, 1968.[2]

(10) The oral as well as the documentary evidence submitted in the incident of intervention dealt substantially with which of the political groups in controversy and in process of registration had prior claim to use a name in one of the cases and an emblem in the other. In view of the disposal we made of the petition it is not necessary to analyze in detail said evidence, especially before the testimony of the Supervisor of Elections in the record to the effect that there did not exist any determination of the Board granting affirmatively the use of the coconut palm tree to the other group claiming it, nor had it certified as political parties the groups of the interveners with the use of that emblem and the name in litigation.

There was evidence brought by intervener Rivera Ramos, tending to show that the 42 petitions which the Federate

[2] On June 7, 1968 we issued certiorari O-68-142 to review the order of the Superior Court on this contention entered on May 6, 1968, which we are also deciding. Both petitions were consolidated for decision.

Progressive group had registered in Culebra with the emblem of the coconut palm tree had been challenged as to its validity pursuant to the provisions of § 37 of the Election Law. The trial court in its decision denying the intervention made pronouncements on this particular.

(11) There are documents in the record on the following points:

(i) On February 18, 1968 the New Party, a political party registered by petition,[3] held a meeting to consider the decision of the Superior Court of February 13, 1968, acknowledging the right of the Federate Progressive group to use the emblem of the coconut palm tree and the name United, and it decided to authorize its Central Directive Committee to adopt those pertinent resolutions to *join officially* the Federate Progressive movement and to change the name of the party to *New Progressive Party*, and to use as the *sole* emblem the coconut palm tree.

(ii) At a meeting held by the Federate Progressive political group on March 10, 1968, four days prior to the hearing of the incident of intervention, they agreed to ratify the resolution of the Central Directing Body of said organization, leaving the coconut palm tree as the only emblem "to be used by the New Progressive Party, that is, by the party created by the *merger* or *joining* of this party with the New Party, and adding to this emblem, if the Central Directing Body or the Executive Committee of the New Party so wished, the emblem of the horseshoe and the slogan or word which the Central Directing Body and/or the Executive Committee of the New Party may deem pertinent. So that the emblem of this group in *joining, merging,* or *grouping* with the New Party under the name of New Progressive Party shall be the coconut palm tree, the horseshoe, and a

---

[3] Section 14 of the Election Law provides that political parties shall be the principal parties and the parties by petition. (See the rest of said section.)

slogan, if the Central Directing Body and/or the Executive Committee of the New Party so desire."

It was decided that the Central Directing Body of the Federate Progressive Party would exist only and exclusively until the *merger, joining,* or *grouping* of both parties into a single one was carried out, and from this moment the Central Directive Body and/or Executive Committee would be the Central Directing Body and/or Executive Committee which the New Party actually has. In order to comply with the foregoing resolutions it was decided to authorize the pertinent officers to file and execute the necessary documents.

(iii) In compliance with the resolutions above-copied, on March 19, 1968, subsequent to the hearing of the incident of intervention, but before deciding said incident, the Central Directing Committee of the New Party and of the Federate Progressive Party met and, in accordance with the resolutions approved by their respective organizations, they agreed: "To carry out officially the *union, merger,* and *integration* of the New Party with the Federate Progressive Party, so that the latter may become an integral part of the New Party, *contributing its names and emblems to said New Party"*. . . "that the New Party, *integrated, joined,* and *merged* with the Federate Progressive Party, use the emblem of the coconut palm tree which the Federate Progressive Party has been using as well as the *name of New Progressive Party."* It was decided to authorize the General Secretary to take the necessary steps in order to acknowledge the integration of the Federate Progressive Party with the New Party, the change of name to *New Progressive Party,* and the limitation of the emblem to the coconut palm tree with the addition of a slogan which shall say: "Security, Equality, and Progress."

█ Considering the facts stated which appear from the record and the documents sent in compliance with the writ issued, this Court reaches the following conclusions:

(a) Insofar as petitioner-intervener herein Carlos Wester-band and his group are concerned, there is no reason to allow him to intervene before the trial court. The unquestionable facts show that neither the Federate Progressive group in itself, or united, integrated or merged with the New Progressive Party, nor the latter, which is a party by petition, use nor shall use the word "United" in their name. It has been thus admitted before this Court. Consequently, there is no right to be defended by petitioner Westerband and his group by way of intervention before the trial court, as a result of the judgment.

(b) Insofar as the other petitioner-intervener, Modesto Rivera Ramos, and the group he directs are concerned, his intervention would be useless. It is so because the resolution of the Commonwealth Board of Elections of August 22, 1967, denying the use of the coconut palm tree to the Federate Progressive group, was not based on the ground that this emblem was previously being used by the group of petitioner Rivera Ramos or by any other. The denial of the Board was based on the fact that the emblem of the coconut palm tree violated the provisions of the law.[4]

(c) There is nothing in the record showing that the *Board* may have permitted the use of the coconut palm tree as an emblem to any group or party, and particularly to the New Progressive Party, if the latter acquired the right to use said emblem as grantee of, or upon integrating or merging with the Federate Progressive group, to which the trial court acknowledged the right to use said emblem.

(d) Neither is it justified to order an intervention because Rivera Ramos' group presented evidence establish-

---

[4] See the aforecited § 37, in agreement with § 26 of Act No. 1 of December 23, 1966, which reads: "The emblems appearing on the ballots used in the plebiscite may not be used by any candidate or party as such *on a ballot* from the date of approval of this act until ten years after the plebiscite has been held."

ing that all the petitions for registration in Culebra of the Federate Progressive group were challenged. Pursuant to § 37 of the Election Law it is incumbent upon the Commonwealth Board of Elections in *first instance* to pass upon the validity of such challenged petitions, and not upon the courts. The resolution of the Board of August 22 which gave rise to the judicial petition for review did not make any pronouncements on this particular.

Finally, the position assumed by the petitioner-intervener Rivera Ramos before the trial court and before this Court has not been that he is entitled, as a matter of law, to use the *coconut palm tree* in the light of the prohibition contained in § 37 of the Election Law and of Act No. 1 of December 23, 1966, irrespective of the question of priority which he seeks to litigate in intervention. Until now, intervener Rivera Ramos has not requested the Board to make any pronouncement as to his right to use the coconut palm tree as a question of validity of his petitions for nomination.

(e) In the light of the foregoing and in the restrictive terms in which we issued this petition for certiorari, the writ issued should be quashed.

### Petition No. O-68-142

This certiorari was issued to review the order of the trial court entered on May 6, 1968, in the same former proceeding for review. The Board indicates in its petition for certiorari that the Superior Court erred (a) in not setting aside the judgment of February 13, 1968 and in modifying it fundamentally, acknowledging rights to a political party which was not a party in the proceedings; (b) that error was committed in deciding that the judgment of February 13 was in full force and effect and may be enforced; and (c) in deciding in the judgment of February 13, 1968 that the emblem of the coconut palm tree is legal and suitable for electoral purposes.

In addition to the facts already set forth, the record shows the following which is more particularly related with this petition.

(12) The dispositive part of the judgment of February 13, 1968 reads textually thus:

"JUDGMENT—For the reasons set forth in the preceding opinion, the resolution of the Commonwealth Board of Elections is reversed and the registration of the political group to which petitioner belongs with the name of United Progressive Party and the emblem of the coconut palm tree is hereby ordered after filing in said Board the sworn statements of the members of the new Board of Directors nominated (Luis A. Ferré, Chairman; Justo A. Méndez, First Vice-Chairman; Carlos Romero Barceló, Jorge Luis Córdova Díaz, Jesús Hernández Sánchez, Hernán Padilla, Vice-Chairmen; José Menéndez Monroig, General Secretary; Federico Torres Campos, Treasurer), accepting said designation and stating that they are willing to fulfill the mission entrusted to them by the petitioners; and by the original members of the Central Body (Emilio Matos; Magdalena López; Antonio Roig Ferré; Gabriel Cánovas), ·certifying under oath the resolutions made by them and which were notified in the sworn letter which the Secretary, Magdalena López, sent to the Supervisor of Elections, Mr. Ernesto Mieres Calimano, on August 21, 1967.—LET IT BE RECORDED AND NOTIFIED."

(13) In the course of the discussion of the motion of the Board of March 14, 1968 to set aside the judgment because it was academic, on the ground that petitioner therein Emilio Matos Ríos was not interested in the registration of the political group "United Progressive Party," the trial court stated the following with respect to its own judgment:

"JUDGE

"I understand my colleague perfectly. The judgment of the court said, look, let us begin, let us analyze the judgment in order to see whether we can avoid the discussions which prolong this unnecessarily.

"The original judgment in the case of Emilio Matos against the Board decided first 'that the coconut palm tree is not an

emblem which violates the law and that, therefore, its use is justified as an emblem for a political party.' Second: 'That the name United Progressive Party is not a name which violates the provisions of the Election Law, because the only resemblance which that name has with the one under which it has allegedly appeared, "Puerto Rican United Front," is merely additional on the basis of the qualifying adjective "United," and that it could not be the legislative intent that because of the mere fact that a name had a conjunctive, or additional, or adjective word within the total context of the name, would place it under the provisions of the prohibition of the Election Law.' Third: 'That in the suit the respondent, the Commonwealth Board, raised certain special defenses where it said that the petitions filed by Emilio Matos, petitioner, had certain defects of law because certain legal requirements had not been met when they were filed.' The court said then, 'we understand that those requirements may be cured and may be easily supplied. The members of the party represented by Emilio Matos Ríos should comply with these requirements.' That is, 'validate the petitions for registration, make them legal, and once they are legal the Board should give the former the name they request and the emblem of the coconut palm tree because it does not violate any law, according to the judgment of this court.'

"The situation now, and now the court can do it because it has before it evidence thereof offered by the respondent himself and the moving party. . . . Subsequently, without complying with the requirement of validating those petitions which was a 'sine qua non' condition in order to give the right to use the coconut palm tree, petitioner's party merges with another party which is accepted as such. On the basis that the party represented by Emilio Matos Ríos has been merged with the New Party, that is, it has been dissolved, because it merged or has disappeared because it has integrated with the New Party, the distinguished counsel of the Commonwealth Board tells the court 'set aside your judgment because it becomes academic since Emilio Matos Ríos is not interested any more in obtaining the name United Progressive nor in the coconut palm tree because he has already merged.' "

"JUDGE
"If the judgment is academic, Emilio Matos Ríos is not

interested, and obviously he cannot be, because he does not represent any political party any more because he merged with another party, why the insistence that a pronouncement be made setting aside a judgment which has a scope which goes beyond Emilio Matos Ríos, which seeks to consecrate the legality of the use of an emblem?" (Record pp. 32–35. Session of April 25, 1968.)

---

"What the distinguished colleague requests the court is to set aside a judgment because it is academic. I want you to point out to me only one legal or jurisprudential ground which may tell me that because of the fact that a judgment becomes academic because it cannot be executed it should be set aside. The execution is not a judicial question. The execution belongs to the party. The party executes it if it wishes, and if it does not wish to do so, it does not execute it.

.        .        .        .        .        .        .        .

"When the court decides that the use of the coconut palm tree was legal, it was not for Cataño. If this court was mistaken, then the highest forum may reverse it and may construct it differently. I do not have the least doubt that the colleague may resort to the Supreme Court requesting the dismissal or requesting the reversal because the court said that it was valid and because he maintains that it is illegal, the Board maintains that it is illegal and it could bring another petition. Now, if this palm tree is being requested by another group and the Board believes that it should not be given to it, that would be another suit. Then, that would be another suit. It would be another, but different from this one."

.        .        .        .        .        .        .        .

"JUDGE
"We have passed on that and the Board does not have to do it if Emilio Matos Ríos does not comply with that and it is obvious that the Board could never be made respondent . . . required to comply with this judgment. That is obvious. And it is thus then because the winning party is not interested in its execution. That since Emilio Matos Ríos is no longer interested because he merged and cannot comply with the 'sine qua non' conditions imposed upon him, the Board is not bound to give

him anything, because as to Emilio Matos Ríos the judgment is inoperative." (Record pp. 39–40–41.)

---

"JUDGE

"I believe that that is not before the Court. That is no ground to set aside the judgment. That is why I indicated to colleague Córdova that he may convey what he acquired. What he does not have cannot be acquired, cannot be conveyed.

"The question here is to set aside a judgment. Now, another problem would be whether or not the New Party is entitled to the use of the emblem of the palm tree. When that contention is raised, it shall be decided. That is not the situation. The situation here is to set aside the judgment which recognized the legality of the palm tree." (Record p. 42.)

(14) During this incident Emilio Matos Ríos, respondent therein, offered to present evidence tending to show that the Board was bound to recognize the emblem of the coconut palm tree to the New Progressive Party, because the voters which constituted the Federate Progressive Party and those which composed the New Progressive Party were the same. Before that tender of evidence, the trial court stated as follows:

"JUDGE

"That would be another question which is not before the consideration of the court. If the colleague believes that the New Party is entitled to the emblem of the palm tree and that the Board is bound to grant it, if the Board denies it, that would be another petition. We are arguing here to set aside or not set aside the judgment which dealt with the emblem of the palm tree. That is a question completely extraneous to this controversy." (Record p. 48.)

Notwithstanding the foregoing pronouncement, the court heard the evidence offered, consisting in the testimony of Luis A. Ferré.

(15) Mr. Ferré testified, in synthesis, that after the termination of the plebiscite for the status on July 23, there

existed in the United Statehood Organization the desire to organize a political party; that he learned of a party which did not go to the plebiscite, and for the purpose of obstructing the creation of a new political party and the use of the emblem, was going to file petitions for registration for a party in Culebra with the emblem of the palm tree in order to take hold of it before any move was made by the "United Statehood Party." After being informed about it they acted rapidly going to Culebra by airplane to anticipate that move, and to obtain the necessary petitions for the registration of a party which should have the palm in different forms as its emblem; that the persons who intervened in Culebra belonged to the United Statehood; that likewise they took steps to secure the registration in Cataño, for the same purpose of protecting the emblem; that subsequently the United Statehood Organization met, agreed to dissolve and to form a political party with the name of "United Progressive" and with the emblem of the coconut palm tree for that new party. That they proceeded to file before the Commonwealth Board of Elections petitions with said name of "United Progressive" and with the emblem of the coconut palm tree, and that the Board denied the registration because the coconut palm tree violated the Plebiscite Law. That in the meantime they registered the New Party using the emblem of a horseshoe as a temporary measure while the registration of the palm was pending. Mr. Ferré stated that the "New Party" had been using the emblem of the coconut palm tree since the Superior Court of Bayamón decided that its use was lawful.

Mr. Ferré's testimony tended to establish that those who registered the "Federate Progressive" group in Culebra and Cataño were the same persons belonging to the "United Statehood" group, which also registered the "New Progressive Party," a party by petition. His position in this incident was that it being the same political group of voters, the New Progressive Party was entitled to use the emblem of

the coconut palm tree, which use had been recognized to the Federate Progressive Party by judgment of February 13, 1968.

(16) In its Order of May 6, 1968 which came here on review and for which we issued this certiorari, the following pronouncements are included:

"Once decided by this Court and by the judgment which is now challenged that the name as well as the emblem of the coconut palm tree do not violate any provision of the Election Law nor of the Plebiscite Law, it was proper for the Board to comply with the judgment or to appeal.

"At the time judgment was rendered, the 'New Progressive Party' was already registered and certified. We have said that said movement was nothing more than a continued projection of the movement initiated in Cataño, both by the petitioner in this case and by Luis A. Ferré and the others who appeared as parties to the suit when it was brought. It being a reality that there exists only one movement constituted by voters inspired by the same purpose which was to become a party by petition and the movement today presided by Luis A. Ferré and in which petitioner Matos Ríos appears as secretary having been certified, it is obvious that it was not necessary to comply with the requirements stated in the judgment to acknowledge the group 'United Progressive Party' with that name and with the emblem of the coconut palm tree, since the merging of one group with the other consolidated the personality of the group which was separated only by reason of the refusal of the Board in denying the petition for the name and the emblem."

. . . . . . . .

"We understand by what has been said that the judgment in this case is legally valid and becomes juridically effective. The rights acquired by the judgment as to the use of the name 'United Progressive Party' and the emblem of the coconut palm tree, were incorporated with the merger which took place between petitioner's party and the 'New Progressive Party' already certified by the Board which, as we have said, is the same group or movement.

"The mandate received by the members of the Central Directive Body in the petitions for registration filed by petitioner

in Cataño, authorized a consolidation or merger such as the one carried out between petitioner's group and the 'New Progressive Party.' (See p. 4 of the Opinion and Judgment.)

"In view of the foregoing it is decided that the judgment rendered in this case is valid, it is not academic, it is in full force and effect and may be enforced. Since the 'New Progressive Party' and the 'United Progressive Party' constitute a single movement which was initiated as such for only one legitimate and genuine purpose without anything to the contrary having been established, the Board is ordered, therefore, to grant the emblem of the coconut palm tree and the name of 'United Progressive Party' if it is thus requested by petitioner in the name of the group which, with the provisional name of 'New Party,' is already certified in the Commonwealth Board of Elections. LET IT BE NOTIFIED."

In conformance with the foregoing and the judgment of February 13, 1968 having been rendered, there was nothing the Commonwealth Board of Elections had to do for its compliance. The step to be taken was incumbent upon respondent therein, Emilio Matos Ríos and his organization.

In its motion of March 14 the Board requested a pronouncement to set aside the judgment or to declare it academic by reason of the acts of Matos Ríos and his group Federate Progressive, subsequent to the judgment rendered. By its own terms the judgment rendered was void as long as Matos Ríos and his group did not act in accordance with the provisions therein.[5]

The trial court should have ruled, either setting aside the judgment or relieving the Board from complying there-

---

[5] The position of the Board was really that it *be relieved* of the effects of that judgment. Rule 49 of the Rules of Civil Procedure provides that the court may relieve a party from a judgment, order, or proceeding, for the following reasons:

.    .    .    .    .    .    .    .

(5) The judgment has been satisfied, *released,* or discharged. . . .

The facts occurred after the judgment was rendered show that Matos Ríos and his group waived their right to require the Board to comply therewith.

with, or else, refusing to set it aside, insofar as the proceeding for administrative review before it is concerned.

■■ In this petition for administrative review the pronouncements made in favor of the New Progressive Party making it beneficiary of the right adjudicated to another party in the aforementioned review proceeding, and under the assumption that Matos Ríos and his group and the New Party were the same voters, were inappropriate.

The New Party was a political entity with proper personality once it was registered as a party by petition. It was not a party to the administrative procedures which gave rise to the petition for review, nor was it a party either, nor did it intervene in the judicial proceeding which followed.[6]

In making such pronouncements the court acted in first instance as if it were a suit of its general jurisdiction and not a proceeding for review on the basis of the administrative record under § 37 of the Election Law.

The most recent electoral legislation indicates a clear legislative public policy that electoral controversies should be decided in the first instance in the administrative agency specially designated to handle such matters, the Commonwealth Board of Elections. The decisions which the former legislation placed with the Secretary of State, which were subject to attacks by means of judicial complaints of the general jurisdiction of the courts, have passed to the Board or to the Supervisor, and may now be attacked by way of review offered by the Election Law itself.

---

[6] Precisely, the original petitioners, Ferré, Menéndez Monroig, and Magdalena Otero, were eliminated from the petition for review and it was dismissed as to them because they were not petitioners before the Board, and they lacked the capacity to claim. Judgment of the San Juan Part of the Superior Court of September 15, 1967. Even though they had not been eliminated, they, as such petitioners, were persons different from the juridical entity, New Party.

There was no occasion in this proceeding for the evidence offered by Mr. Ferré through his testimony, and which undoubtedly was the basis for the pronouncements in the Order of May 6 which declared enforceable the judgment of February 13, ordering the Board to grant the emblem of the coconut palm tree and the name of "United Progressive Party" to the entity "New Party," already certified as a political party.

On the foregoing grounds, it is proper to set aside such pronouncements.

■ Said pronouncements having been eliminated, there remains in the record a judgment of February 13, 1968 devoid of legal validity and effect by its own terms on April 25, 1968, date on which the motion of the Board of March 14 was heard; such judgment not being enforceable as of that date. The trial court should have ruled thus in its order of May 6, 1968.

This decision in no way prejudges, in one sense or another, the right which the New Party, represented in the Board, may or may not have to claim before it the use of the coconut palm tree as emblem in the electoral ballot, nor prejudges in any manner the decision the Board may enter, if such petition were made.

Judgment will be rendered:

(i) Quashing the writ of certiorari issued in petition O-68-120; and

(ii) Setting aside the Order appealed from, of May 6, 1968, in petition O-68-142, and decreeing that the judgment of February 13, 1968 is void, ineffective, and unenforceable. The record will be remanded to the trial court.

Mr. Chief Justice Negrón Fernández, Mr. Justice Pérez Pimentel, and Mr. Justice Torres Rigual did not participate herein. Mr. Justice Hernández Matos dissented in petition No. O-68-142. Mr. Justice Blanco Lugo delivered a concurring opinion in petition O-68-120, in which Mr. Justice

Ramírez Bages concurs. Mr. Justice Rigau delivered a separate opinion concurring in part and dissenting in part.

—O—

MR. JUSTICE BLANCO LUGO, with whom MR. JUSTICE RAMÍREZ BAGES joins, concurring.

San Juan, Puerto Rico, June 28, 1968

Since August 25, 1967, Emilio Matos Ríos filed an action to set aside a decision of the Commonwealth Board of Elections rendered August 21, denying "the petition filed by the group 'Federate Progressive'" requesting (i) to change the name from Federate Progressive Party to United Progressive Party, (ii) to eliminate the emblems of the royal palm and the crossed palms submitted in the petitions for registration and to leave the coconut palm tree only as emblem of the aforementioned group, and (iii) to substitute the board of directors by other persons mentioned in the petition. Five and a half months later,[1] on February 13, 1968, judgment was rendered favorable to petitioner. The decision of the Board was reversed and the registration of the political group with the name United Progressive Party and the emblem of the coconut palm tree was ordered, after the filing of certain documents in the Commonwealth Board.

It is not until February 19 that Carlos Westerband and Modesto Rivera Ramos, in their capacity as Chairmen of the groups called Puerto Rican United Front and the Federal Unionist Agrarian Party, requested intervention alleging

---

[1] After several preliminary incidents concerning the dismissal—which gave rise to a partial judgment—and change of venue, on October 9 the parties were granted a term of 20 days to present certain documentary evidence and memoranda, at the reception of which the suit would be considered submitted for decision. On November 24, a petition for extension of 10 days requested by plaintiff was granted; on December 5 an additional unextendible term of 10 days which would expire on December 15 was granted to file the memorandum.

that the judgment rendered affected them adversely and directly. After a hearing during which the presumptive interveners presented oral and documentary evidence, the trial court dismissed the petition for intervention.[2]

The trial court did not err. Rules 21.1 and 21.2 constitute the applicable law.[3] Intervention after judgment is rendered is unusual, it partakes of an exceptional character, and powerful reasons only justify it. It must be proved that the interveners will be bound by the outcome of the judgment, *Mercado Riera* v. *Superior Court*, 89 P.R.R. 271, 275 (1963); *Gerena* v. *Lamela*, 79 P.R.R. 544 (1956), and that possibly the objection of res judicata may be set up against them, Barron & Holtzoff, 2 Federal Practice and Procedure 373, § 597. We are not convinced that the pronouncements of the judgment affect any right which Modesto Rivera Ramos may claim on the emblem of the palm tree, relying on the assumption of priority in its use to which he refers in his

---

[2] Since Matos Ríos had desisted from the use of the word *United* in the name of its group, any intervention on the part of Westerband was academic.

[3] "21.1. *As matter of right*

"Upon timely application, anyone shall be permitted to intervene in an action (a) when a statute or these rules confer an unconditional right to intervene; or (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court."

"21.2. *Permissive intervention*

"Upon timely application, anyone may be permitted to intervene in an action: (a) when a statute confers a conditional right to intervene; or (b) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a governmental officer or agency, or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

petition for intervention as "anticipation of the performances concerning registration."

On the other hand, after considering the petition as one of permissible intervention, Rule 21.2, the usual criterion to determine its justification rests in the court's discretion guided by the provisions of the rule itself which requires "timely application" and the consideration of whether "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." See Barron & Holtzoff, *op. cit.* at 365–366, § 594. It cannot be denied that the petition was filed at the last possible moment and there is no doubt that to allow the intervention at this stage of the proceedings will prejudice the original parties delaying the final adjudication of a controversy which, because of the proximity of the general elections of 1968, should be decided promptly and definitively. Moreover, the only common question of law and of fact which the interveners may have in the principal suit refers to the use of the emblem of the palm tree for electoral purposes, and in this respect, their position is not conflicting, but rather germane, to that of plaintiff. Their appearance would only engraft the controversy on the priority of the use of said emblem, and this clearly introduces a new issue. In these cases intervention is not favored. Barron & Holtzoff, *op. cit.* at 376, § 597. See, also, 4 Moore, Federal Practice, § 24.10 (2d ed.).

Finally, we cannot disregard the fact that interveners' effort, as revealed by the evidence and by their own acts and statements,[4] is not genuinely directed to claim an emblem for the elections, but rather to prevent Matos Ríos' group from using it.

---

[4] In the motion filed before the trial court it is said upon referring to the coconut palm tree, "if the electoral use of the coconut palm tree as emblem is permitted" and "if the coconut palm tree is permitted as an emblem despite the fact that it was actually used together with the royal palm tree in the plebiscitary campaign."

The order of the trial court denying the intervention should be affirmed.

—O—

Separate vote of MR. JUSTICE RIGAU.

San Juan, Puerto Rico, June 28, 1968

I concur in part with but dissent in part from the opinion of the Court. I concur with the result of said opinion insofar as it decides that the judgment of February 13, 1968 and the order of May 6 of the same year, of the Superior Court, Bayamón Part, are null and void.

I dissent, however, from the opinion of the Court as to the manner it disposes of this matter. I believe that the Court should have considered and decided the main question in this litigation, which consists in whether or not the use of the emblem of the coconut palm tree by a political party in the ballots in the elections to be held in Puerto Rico in November 1968 is legally permissible. That that is the principal issue of this action was argued by petitioner himself in his brief of June 17, 1968, and in his testimony at the hearing held in this Court on June 20.

Our intervention in the main matter of these proceedings was made possible as a matter of procedure because the trial court by its order of May 6, 1968 substantially amended its judgment of February 13 of the same year and decided the matter on the merits. In view thereof, the decision of the trial court in the aforecited order of May 6 was open for review by this Court.

In failing to decide the main question of this litigation, what the Court has actually told the parties is the following: "The Superior Court, Bayamón Part, erred on February 13 and on May 6, 1968. Begin again."

I believe that the Commonwealth Board of Elections and the political parties which favor the federate statehood should

know, as soon as possible, which is the legal situation on this matter for we may assume that the Board needs to print the ballots and the political parties need to design, print, and utilize their propaganda material for the coming elections.

For the reasons stated, instead of inviting to start a new suit, I would have decided now the contention concerning the use or nonuse of the emblem of the coconut palm tree in the ballots.